JS-6

LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
  Email: daniel@lawyersforcleanwater.com
Layne Friedrich (Bar No. 195431)
  Email: layne@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiff*
SANTA BARBARA CHANNELKEEPER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA BARBARA CHANNELKEEPER, a California non-profit corporation;<br><br>    Plaintiff,<br>  vs.<br><br>COUNTY OF SANTA BARBARA, a municipal corporation<br><br>    Defendant. | Civil Case No. 2:15-cv-09758-BRO-(Ex)<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act,<br>33 U.S.C. §§ 1251 *et seq.*)** |

1

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Santa Barbara Channelkeeper ("Plaintiff" or "Channelkeeper") and Defendant County of Santa Barbara ("Defendant" or "County").  The entities entering into this Consent Decree are each an individual "Party" and collectively "Settling Parties."

**WHEREAS**, Channelkeeper is a non-profit public benefit corporation dedicated to, among other things, the protection and enhancement of the water quality of the Santa Barbara Channel;

**WHEREAS**, the County is a political subdivision of the state of California;

**WHEREAS**, the County owns and operates the South Coast Recycling and Transfer Station located at 4430 Calle Real in Santa Barbara, California (hereinafter "SCRTS" or "Facility");

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on October 8, 2015, Channelkeeper issued a sixty (60) day notice letter ("Notice Letter") to the County.  The Notice Letter alleged violations of the Clean Water Act and informed the County of Channelkeeper's intention to file suit against the County. The Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, and the Executive Director of the State Water Resources Control Board ("State Board"), as required by section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).  The Notice Letter was also sent to the Executive Officer of the Regional Board;

**WHEREAS**, on December 18, 2015, Channelkeeper filed its complaint against the County in the United States District Court for the Central District of California, Case No. 2:15-cv-09758-BRO (Ex) (hereinafter "Complaint");

**WHEREAS**, the County denies Channelkeeper's allegations that it has violated the Clean Water Act or the Storm Water Permit and denies it has liability to Channelkeeper;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of the Complaint's claims or admission by the County of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement to avoid the costs and uncertainties of further litigation;

**WHEREAS**, all actions taken by the County pursuant to this Consent Decree will be made in compliance with all applicable federal, state and local rules and regulations; and

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over this citizen suit pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.      The Complaint alleges claims for relief pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.      Plaintiffs have standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

I.       **AGENCY REVIEW AND TERM OF CONSENT DECREE**

6.       Plaintiff shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review or the expiration of the 45 day comment period provided to them, the Settling Parties shall submit the Consent Decree to the Court for entry.

7.       The term "Effective Date" as used in this Consent Decree shall mean expiration of the 45 day comment period provided for the United States Environmental Protection Agency and Department of Justice in the Clean Water Act, or the date the Department of Justice submits a "no comment" letter to the Court, whichever is earlier.

8.       This Consent Decree shall terminate within the earlier of the following: 1) four (4) years from the Effective Date; or 2) 365 days from implementation of a storm water diversion system at the Facility if the County implements such a system and makes an early termination demonstration as described in paragraphs 18 through 20 and 64 below.  These termination provisions apply unless at the time for termination, there is an ongoing, unresolved dispute regarding the County's compliance with this Consent Decree, in which case Plaintiff will seek termination of the Consent Decree within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

II.      **COMMITMENTS OF THE SETTLING PARTIES**

     A.       **Storm water Pollution Control Best Management Practices.**

9.       In addition to maintaining the current Best Management Practices ("BMPs") at the Facility, the County shall develop and implement the BMPs

identified herein.

10.     Within ninety (90) days of the Effective Date, to the extent they have not already done so, the County shall develop and/or implement the following additional BMPs.

     10.1   Vehicle and Equipment Maintenance and Repair. All vehicle and equipment maintenance or repair shall be conducted indoors in the fully enclosed Maintenance Shop shed.

     10.2   Waste Oil Storage and Disposal. All waste oil collection shall be conducted indoors in the Maintenance Shop shed.  Waste oil storage with secondary containment will be in the existing Oil Shed, which is a separate indoor structure attached to the Maintenance Shop.  The existing 1,000 gallon oil storage tank will be removed from the site.

     10.3   Cleaning and Maintaining the Storm Drainage System. The County shall install BMPs such as straw wattles, filters, and/or oil absorbents at each drain inlet at the Facility. Defendant shall implement procedures for the inspection and maintenance of all drain inlet BMPs to ensure the drain inlet BMPs are in place, working as intended, and are being replaced as needed, and according to manufacturer's schedule. The BMP drain inlet inspections shall occur during routine weekly inspections during the Wet Season[1], and routine monthly inspections during the Dry Season. The County shall inspect the Facility's storm water system and related treatment BMPs on a weekly basis during the Wet Season and on a monthly basis during the Dry Season and remove from them any object affecting the performance of the storm water system (e.g., wood, metal, concrete and other debris).

     10.4   Containing Refuse and Litter. The County shall install BMPs such as fence barriers, filter fabric and/or other wind control BMPs to prevent refuse and other materials from discharging with storm water.

---

[1] The Wet Season is October 1 through May 1.

10.5   <u>Sweeping</u>. Defendant shall develop and implement a plan to sweep all impervious ground surfaces at the Facility using a mechanical sweeper according to the following schedule: (1) at least once a week during the Wet Season; and (2) at least once per month during the dry season. Defendant shall keep a log of all sweeping done at the Facility.

10.6   <u>Divert flows</u>. The County shall install BMPs such as berms, straw wattles or other measures to divert storm water away from stockpile and waste storage areas at the Facility.

10.7   <u>Use of Temporary Coverings</u>. Defendant shall place secured lids, covers, or tarps on storage bins, including but not limited to waste disposal and industrial material storage containers at the Facility:  (1) if it rains for 15 minutes or more while the Facility is operating; and (2) at the end of an operational day if a precipitation event of 0.1 inch, or more, of rain is predicted to occur after the Facility ceases operating for the day with a minimum likelihood of occurrence of fifty-percent (50%) by the National Weather Service (Oxnard/Los Angeles). Defendant shall inspect tarps and other temporary coverings that are used at the Facility to cover storage bins and other containers used for storage to ensure that the tarps and coverings are in place, intact, in good condition and preventing the exposure of pollutant sources to precipitation. The inspections shall take place as part of weekly housekeeping activities during the Wet Season and monthly housekeeping activities during the Dry Season. All tarps or other covers shall be repaired or replaced as necessary to prevent exposure of pollutant sources to precipitation.

10.8   <u>Raptor Program</u>.  The County shall continue to use a falcon at the Facility for bird management.

**B**.   **Advanced BMP Implementation.**

11.   On or before November 1, 2017, the County shall implement an Advanced BMP(s), as that term is used in Section X.H.2. of Order No. 2014-0057-DWQ ("Advanced BMP(s)"), sufficient to eliminate storm water discharges generated by a

storm up to the design storm as calculated pursuant to Section X.H.6. of Order No. 2014-0057-DWQ, the "Design Storm Standards for Treatment Control BMPs" (hereafter the "Design Storm") for the capture area identified on Exhibit A or, if the County continues to discharge storm water in storms smaller than the Design Storm event, an Advanced BMP(s) sufficient to meet the requirements of paragraphs 28 through 30 below and sized to treat storm water discharges generated by storms up to the Design Storm.  Approval of any Advanced BMP(s) will be subject to all applicable California Environmental Quality Act ("CEQA") review processes, permitting requirements, public comment and hearing requirements, and other public approval processes.

12.     The County shall make best efforts to give notice to Channelkeeper by January 1, 2017, if the County deems that it cannot complete implementation of an Advanced BMP(s) by November 1, 2017 due to information produced from any required CEQA review process or other public review and hearing processes.  In any event, the County will within ten (10) days of making such determination provide written notice of the anticipated non-implementation to Channelkeeper. The notice will include the new information leading to the failure to implement, a proposed schedule for implementation of an Advanced BMP(s), and if the proposed schedule delays implementation of an Advanced BMP(s) for more than 180 days, a proposal to modify and/or to extend the term of the Consent Decree sufficient to allow monitoring of any elimination of storm water discharges up to the Design Storm for one (1) wet season or if storm water discharges during less than Design Storm events continue, to allow monitoring for three (3) wet seasons.

**C.     Advanced BMP Analysis.**

13.     Within sixty (60) days of the Effective Date, the County will evaluate Advanced BMPs for the Facility, including but not limited to: 1) a Storm Water Diversion option; 2) an Advanced On-Site Treatment BMP; and 3) any other option identified in Section X.H.2. of Order No. 2014-0057-DWQ that the County selects (collectively referred to as the "Advanced BMP Analysis"). The Advanced BMP

Analysis shall evaluate the details of each option and evaluate a timeline for potential implementation of each option consistent with paragraph 11 of this Consent Decree. Channelkeeper shall have thirty (30) days upon receipt of Defendant's Advanced BMP Analysis to provide Defendant with comments related to the adequacy of the analysis on an Advanced On-Site Treatment BMP or any other option selected by the County under No. 3 above, as to compliance with the Consent Decree, if any. Within thirty (30) days of Defendant's receipt of Channelkeeper's comments, Defendant shall accept and incorporate Channelkeeper's comments or, if Defendant declines to accept one or more of Channelkeeper's recommendations shall provide Channelkeeper with a written explanation of the grounds for rejection.  The Storm Water Diversion option evaluation will be subject to comments by and design requirements of the Goleta Sanitary District on any permit or similar submittal.

14.     Disputes regarding the Advanced BMP Analysis, or implementation of an Advanced BMP(s), shall not impact the schedule for implementing any other BMPs required in Paragraphs A.10, I, J, or K of this Consent Decree. Any disputes over the adequacy of the Advanced BMP Analysis shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section M below.

**D.     Storm Water Diversion Option Evaluation.**

15.     As part of the Advanced BMP Analysis required in paragraph 13 above, the County shall evaluate capture and discharge to the Goleta Sanitary District system of all non-storm water and all storm water runoff generated by the Design Storm within the boundaries defined in Exhibit A attached hereto ("Capture Area").

16.     The analysis of the Storm Water Diversion option shall include a permit application or similar submittal to the Goleta Sanitary District for connection to its collection system pursuant to its permit requirements, which may include an analysis by the County or Goleta Sanitary District as to pipe installation, capacity limitations, on-site detention, and pre-treatment requirements.

17.     If the County's permit or similar submittal to Goleta Sanitary District is not complete by December 1, 2016, the County shall submit a report to Channelkeeper describing the status of that option's evaluation by December 15, 2016.

18.     Should the County implement the Storm Water Diversion option, the Consent Decree will terminate pursuant to paragraph 64 below after the installation of the Storm Water Diversion option if the County demonstrates, to Channelkeeper's satisfaction, zero non-storm water and storm water discharge for the Design Storm from the Capture Area for three hundred sixty five (365) days following implementation of the Storm Water Diversion option (referred to as the "Diversion Report"). In the Diversion Report the County shall include a written demonstration that the Storm Water Diversion option has eliminated storm water discharge from the Capture Area for the Design Storm at the Facility and shall also include:

18.1    Documentation that all storm water run-on to the Capture Area has been redirected around the Capture area, or that run-on has been included in the capacity calculations;

18.2    Calculation of the storm water generated at the Capture Area during the Design Storm, and a demonstration of adequate detention and conveyance capacity to convey the flows from that storm to the sanitary sewer;

18.3    Flow metering at the discharge point to the sanitary sewer, and rain gauge data, sufficient to compare the volume discharged to the sanitary sewer to rain event return periods, for each rain event; and

18.4    Visual observations at the point of diversion to the sanitary sewer during each qualifying rain event.

19.     The County will send the Diversion Report to Channelkeeper when complete.

20.     Channelkeeper will comment on the Diversion Report within 30 days of receipt, or send written notification of its approval of the Diversion Report. If Channelkeeper does not approve the Diversion Report, the County shall provide

written responses to Channelkeeper's comments on the Diversion Report within thirty (30) days of the County's receipt of Channelkeeper's comments. Disputes as to the adequacy of the Diversion Report will be resolved via the dispute resolution provisions of this Consent Decree.

**E.      Advanced On-Site Treatment BMP Option Evaluation.**

21.      As part of the Advanced BMP Analysis required in paragraph 13 above, the County shall also evaluate an Advanced On-Site Treatment BMP option ("Advanced On-Site Treatment Plan").

22.      The Advanced On-Site Treatment Plan shall consider measures at the site to reduce the volume of storm water to be treated by the Advanced On-Site Treatment BMP, including but not limited to:

22.1   Channeling run-on from adjacent up-gradient areas around the site;

22.2   Limiting industrial activities and materials;

22.3   Removing pavement from areas no longer hosting industrial activities; and

22.4   Assessing consolidation of industrial activities.

22.5   The Advanced On-Site Treatment Plan shall at a minimum require installation of advanced treatment control measures with sufficient capacity to treat storm water generated in the Facility's industrial operations area, as designated in the map attached hereto as Exhibit A, and based on the Design Storm. The Advanced On-Site Treatment Plan shall provide for treatment sufficient to treat to the effluent quality required in Table 1 and, if applicable, Table 2 ("Numeric Levels"), below.

23.      The Advanced On-Site Treatment Plan shall include a plan for a study to evaluate sources of fecal contamination in storm water discharges from the Facility (hereinafter referred to as the "Microbial Source Tracking Study"). The Microbial Source Tracking Study ("MST Study") shall evaluate storm water samples collected pursuant to paragraph 27.1 of this Consent Decree over a 365-day period, or until July 1, 2017 if that date is earlier. The MST Study shall be conducted using PCR DNA

analysis for Human and Dog. The MST Study shall seek to determine whether waste from any of the sources listed above contribute to Fecal Indicator Bacteria ("FIB") discharges from the Facility.

24.     If the County proceeds with the Advanced On-Site Treatment Plan option, it shall submit the MST Study with a report summarizing the results of the MST Study, with laboratory reports attached, to Channelkeeper on or before July 15, 2017. Channelkeeper shall have thirty (30) days to comment on the MST Study and summary report. Disputes as to the adequacy of the MST Study will be resolved via the dispute resolution provisions of this Consent Decree. If the County begins implementation of the Storm Water Diversion option, it may terminate the MST Study.

**F.      Advanced BMPs From Order No. 2014-0057-DWQ Evaluation.**

25.     As part of the Advanced BMP Analysis required in paragraph 13 above, the County also may evaluate other Advanced BMPs including those specifically identified in Section X.H.2. of Order No. 2014-0057-DWQ. The County shall evaluate any such Advanced BMP pursuant to the standards and procedures set forth in Sections C through E above.

**G.      Storm Water Discharge Locations, Storm Water Sampling.**

26.     If the County implements an Advanced BMP(s) that continues to discharge from the site in less than Design Storm events, the County shall berm, channel and otherwise direct all storm water discharges at the Facility to a collected drain system to only one (1) storm water discharge location, which the County will identify as part of its Advanced BMP Analysis

27.     Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

        27.1   Frequency. During the life of this Consent Decree, the County shall collect samples of storm water discharges from the Facility during operational hours from at least four (4) "Qualifying Storm Events ("QSE")," as that phrase is

defined in paragraph XI.B.1. of Order No. 2014-0057-DWQ, that occur in a Reporting Year,[2] such that Defendant collects two (2) samples during the first half of the Reporting Year and two (2) samples during the second half of the Reporting Year. If, prior to February 1, Defendant has collected samples from two (2) or fewer QSEs, Defendant shall continue to sample QSEs until Defendant has collected four (4) samples for the Reporting Year.

       27.2   <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

       27.3   <u>Lab</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree, excepting pH which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

       27.4   <u>Detection Limit</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

       27.5   <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136, excepting pH which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

       27.6   <u>Lab Results</u>. The County shall request that sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) days of laboratory receipt of the sample.

       27.7   <u>Reports to Channelkeeper</u>. The County shall provide the complete lab results and pH results of all samples collected at the Facility to Channelkeeper at the time that it uploads the lab results to the SMARTS database.

---

[2] A "Reporting Year" is July 1 to June 30.

**H.      Discharge Standards.**

28.      <u>Storm Water Contaminant Reduction</u>. If the County implements an Advanced BMP(s) that continues to discharge storm water in less than the Design Storm and following the implementation of such BMP(s), the presence of any contaminant in storm water discharge from the Facility in excess of, or outside the range of, any Numeric Level in Table 1 during a single Reporting Year and pursuant to the limits of paragraph 30 below shall trigger the action plan requirements.

**Table 1. Numeric Levels for Storm Water Discharges**

| Contaminant | Level | Source of Level |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2015 EPA Benchmark |
| Total Copper | 0.0332 mg/L | 2015 EPA Benchmark |
| Total Lead | 0.262 mg/L | 2015 EPA Benchmark |
| Total Zinc | 0.26 mg/L | 2015 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2015 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2015 EPA Benchmark |
| Total Recoverable Iron | 1.00 mg/L | 2008 EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | 2015 EPA Benchmark |
| pH | 7.0-8.5 units | Basin Plan |

29.      Where the MST Study detects human or dog markers in discharges from the Facility, the County shall begin sampling discharges up to the Design Storm for the constituents in Table 2 below following implementation of any Advanced BMP(s). If any samples for fecal coliform or E.Coli exceed any Table 2 Numeric Levels during a single Reporting Year, the County shall submit an Action Plan pursuant to paragraphs 30 and 31 below to add disinfection sufficient to achieve the Table 2 Numeric Levels:

**Table 2.  Numeric Bacteria Levels for Storm Water Discharges**

| Fecal Coliform | 400 MPN/100 ml | Basin Plan Objective |
|---|---|---|
| Escherichia coli (E. coli) | 576 MPN/100 ml | Water Quality Criteria |

30.    <u>Action Plan for Table 1 Numeric Level Exceedances</u>. If after implementation of an Advanced BMP(s) that continues to discharge in less than the Design Storm results for:  (1) any two (2) storm water sample(s) collected at the Facility for zinc, copper, lead, chemical oxygen demand, iron, aluminum, oil and grease, or total suspended solids exceed any Table 1 Numeric Level during a single Reporting Year; or (2) any two (2) storm water samples collected at the Facility for pH are outside the range of the Table 1 Numeric Level during a single Reporting Year, the County shall submit a plan to implement pollution control measures designed to achieve the Table 1 Numeric Levels ("Action Plan") during the following Wet Season. Results from discharge samples that are greater in size than the Design Storm shall be excluded from the count of Numeric Level exceedances and the Action Plan analysis.  An Action Plan shall be submitted by August 1 in the Reporting Year during which the Table 1 exceedance(s) occurs. For example, if there are any exceedances between the Effective Date of this Consent and the end of the 2016/2017 Reporting Year (i.e. June 30, 2017) the Action plan will be due August 1, 2017.

31.     <u>Action Plan Requirements</u>. Any Action Plan submitted based on storm water samples containing pollutants above Table 1 Numeric Levels and the limits of paragraph 30 shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Numeric Level(s), (2) an assessment of the source for each contaminant exceedance, including but not limited to any outdoor material storage or processing areas and any outdoor vehicle and equipment maintenance areas, (3) the identification of additional BMPs, including an evaluation of the treating of storm water, that are designed to achieve compliance with the Numeric Level(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s)

1  for implementation shall ensure that all Action Plan measures are implemented as

2  soon as possible, but in no case later than January 1.

3      32.    <u>Review</u>. Channelkeeper shall have thirty (30) days upon receipt of an

4  Action Plan to provide the County with comments related to the adequacy of the

5  Action Plan as to compliance with the Consent Decree. Within thirty (30) days of the

6  County's receipt of Channelkeeper's comments on the Action Plan, the County shall

7  provide written responses to Channelkeeper's comments of recommended BMPs into

8  the Action Plan that either accept and incorporate Channelkeeper's comments or

9  explain the basis for the County's rejection of Channelkeeper's comments.

10      33.    <u>Disputes</u>. Disputes regarding the adequacy of a particular BMP shall not

11  impact the schedule for implementing any other BMP set forth in the Action Plan.

12  Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the

13  dispute resolution provisions of this Consent Decree, set out in Section M below.

14      34.    <u>Completion of an Action Plan</u>. When an Action Plan is completed, the

15  County shall revise its Storm Water Pollution Prevention Plan ("SWPPP") and/or

16  Monitoring and Reporting Plan ("M&RP"), as applicable, prior to the next Wet

17  Season, or within thirty (30) days of completion of the Action Plan, whichever is

18  sooner, to reflect the changes required by the Action Plan. The County shall notify

19  Channelkeeper when an Action Plan has been completely implemented, and shall

20  submit the revised SWPPP and/or M&RP to Channelkeeper for review and comment

21  related to the adequacy of the SWPPP and/or M&RP as to compliance with the

22  Consent Decree upon revision.

23      **I.**    **Visual Observations.**

24      35.    <u>Storm Water Discharge Observations</u>. During the life of this Consent

25  Decree, the County shall conduct visual observations of any rain event that produces

26  discharge and occurs during business hours.

27      36.    <u>Non-Storm Water Discharge Observations</u>. During the life of this

28  Consent Decree, the County shall conduct monthly non-storm water visual

1    observations at each discharge location.

2        37.    <u>Visual Observations Records</u>. The County shall maintain observation

3    records to document compliance with this section, and shall provide Channelkeeper

4    with a copy of these records within fourteen (14) days of receipt of a written request

5    from Channelkeeper for the records.

6        **J.**    **Employee Training.**

7        38.    <u>Training Program</u>. Within forty-five (45) days of the Effective Date, the

8    County shall develop and have begun to implement a training program to ensure (1)

9    that there are a sufficient number of employees delegated to achieve compliance with

10   the Storm Water Permit and this Consent Decree at the Facility, and (2) that these

11   employees are properly trained to perform the required activities to achieve

12   compliance with the Storm Water Permit and this Consent Decree ("Training

13   Program"). At a minimum the Training Program shall include:

14       38.1.  <u>Non-Storm Water Discharges</u>. Employees will be trained on the

15       Storm Water Permit's prohibition of non-storm water discharges,

16       so that employees know what non-storm water discharges are, that

17       non-storm water discharges can result from improper washing or

18       dust control methods, and how to detect and prevent non-storm

19       water discharges.

20       38.2.  <u>The SWPPP and BMPs</u>. The County shall train all employees on

21       the SWPPP and specifically BMP implementation and/or

22       maintenance, as applicable, to ensure that BMPs are implemented

23       effectively to prevent the exposure of pollutants to storm water, to

24       prevent the discharge of contaminated storm water, and to ensure

25       the proper handling of storm water at the Facility.

26       38.3.  <u>Storm Water Sampling</u>. The County shall designate an adequate

27       number of employees necessary to collect storm water samples

28       from each discharge location at the Facility as required by this

Consent Decree. The training for these individuals shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory or analyzed onsite, as applicable.

38.4. <u>Training Language</u>. The Training Program shall be conducted in the language of the employee(s) participating in the Training Program.

38.5. <u>Frequency</u>. The Training Program shall be repeated annually, or as necessary to ensure that all responsible employees are familiar with the requirements of this Consent Decree and the Storm Water Permit.

38.6. <u>New Staff</u>. All new staff will participate in the Training Program before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

39. <u>Training Implementation</u>. A private consultant, a County employee, who is familiar with this Consent Decree and completes a State Water Board sponsored or approved Qualified Industrial Storm Water Practitioner ("QISP") training course ninety (90) days after that training becomes available, or a person with the equivalent credentials, as specified at paragraph IX.A.1. of Order No. 2014-0057-DWQ shall implement the Training Program at the Facility.

40. <u>Training Records</u>. The County shall maintain training records to document compliance with this section and shall provide Channelkeeper with a copy of these records on July 15 annually for the life of the Consent Decree.

## K. Compliance Monitoring and Reporting.

41. <u>Site Inspections</u>. Each Reporting Year during the life of this Consent Decree, Channelkeeper and its representatives accompanied by a County Representative(s) may conduct up to two (2) site inspections during the Wet Season

and one (1) dry season site inspection (for a total of three (3) inspections per Reporting Year), plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree.

41.1. <u>Notice</u>. The site inspections shall occur during normal business hours. Channelkeeper shall provide the County with twenty-four (24) hours' notice prior to each Wet Season site inspection, and at least seventy-two (72) hours' notice prior to a dry weather inspection.

41.2. <u>Documents</u>. During the site inspections, Channelkeeper and its representatives shall be allowed access to the Facility' SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Facility.

41.3. <u>Samples</u>. During the site inspections, Channelkeeper and/or its representatives may collect samples of discharges from the Facility. A certified California laboratory shall analyze samples collected by Channelkeeper and copies of the lab reports shall be provided to the County within ten (10) business days of receipt. At the request of the County, the samples shall be split and one half provided to the County so as to allow the County to have its own certified California laboratory analyze the samples, in which case the County shall provide the laboratory results to Channelkeeper within ten (10) business days of receipt.

41.4. <u>Scope</u>. During the site inspections, Channelkeeper and/or its representatives will be permitted to take written notes, photographs or videos to record information, data, or observations.

42. <u>Compliance Monitoring and Oversight</u>. The County agrees to partially defray Channelkeeper's monitoring of the County's compliance with this Consent Decree in the amount of Five Thousand Dollars ($5,000.00) per year for the life of

this Consent Decree. The first annual payment shall be made within ten (10) days of the end of the 45-day Federal Agencies review period described in paragraph 6 above, and by July 15th each year thereafter. All payments shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

43. <u>Action Plan Payments</u>. If the County is required to submit an Action Plan to Channelkeeper, the County shall make a payment of Six Thousand Dollars ($6,000.00) per Action Plan payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129. The Action plan payment shall be made at the time an Action Plan is submitted to Channelkeeper.

44. <u>Reporting and Document Provision</u>. During the life of this Consent Decree, the County shall provide Channelkeeper with a copy of all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency, county, or municipality. Such reports and documents shall be provided to Channelkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any correspondence related to the County's compliance with the Storm Water Permit or water quality received by the County from any regulatory agency, State or local agency, county, and/or municipality shall be forwarded to Channelkeeper within fourteen (14) days of receipt by the County.

45. The County shall provide Channelkeeper with documents in the County's possession or control reasonably required to evaluate compliance with this Consent Decree within 30 days of written request by Channelkeeper.

**L.    Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.**

46. <u>Environmental Mitigation Project</u>. To remediate environmental harms related to the allegations in the Complaint, the County agrees to make a payment of

Forty-Three Thousand Dollars ($43,000.00) to South Coast Habitat Restoration to fund environmental project activities that will benefit the Goleta Beach and Estuary, and the surrounding watershed. The payment shall be made within sixty (60) days of the Effective Date of this Consent Decree and made payable to the "South Coast Habitat Restoration" and delivered to P.O. Box 335, Carpinteria, California 93014. The County shall provide Channelkeeper with a copy of such payment.

47. <u>Channelkeeper's Litigation Costs</u>. To partially reimburse Channelkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, the County shall pay a total of One Hundred Thousand Dollars ($100,000.00). The payment shall be made within ten (10) days of the Effective Date of the Consent Decree, and made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

**M.   Dispute Resolution.**

48. This Court shall retain jurisdiction over this matter for the life of this Consent Decree for the purposes of enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

49. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute over a period of thirty (30) calendar days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

50.     If the Settling Parties cannot resolve a dispute by the end of informal meet and confer negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.

51.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

**N.      Mutual Release of Liability and Covenant Not to Sue.**

52.     <u>Channelkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Channelkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, the County (and each of its current and former supervisors, officers, directors, employees and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives) from, and waives all claims which arise from or pertain to the Complaint, including all claims for injunctive relief, penalties, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed up to the date of termination of the Consent Decree.

53.     <u>The County's Release</u>. Upon the Effective Date of this Consent Decree, the County, on its own behalf and on behalf of its current and former supervisors, officers, directors, employees, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Channelkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to the

Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred up to the date of termination of the Consent Decree.

54.     Nothing in this Consent Decree limits or otherwise affects Channelkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before a regulatory agency, or any other judicial or administrative body on any other matter relating to the County's compliance with the Storm Water Permit or the Clean Water Act.

**O.     Miscellaneous Provisions.**

55.     <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The County maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

56.     <u>Force Majeure</u>. A Force Majeure event is a circumstance beyond a Party's control and includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, employee negligence or misconduct, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not

excuse or delay compliance with any or all other obligations required under this Consent Decree.

57.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

58.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

59.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

60.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent as follows:

<u>If to Plaintiff:</u>
Kira Redmond, Executive Director
        kira@channelkeeper.org
714 Bond Avenue
Santa Barbara, California 93103

With copies to:

Daniel Cooper
        daniel@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

<u>If to Defendant:</u>
Mark Schleich
Resource Recovery & Waste Management Deputy Director
        Schleich@cosbpw.net
County of Santa Barbara
Public Works Department
123 E. Anapamu St.
Santa Barbara, CA 93101

1   With copies to:

2   Amber Holderness

3   aholderness@co.santa-barbara.ca.us
    Santa Barbara County Counsel
4   105 E. Anapamu St.
    Santa Barbara, CA  93101

5

6       The Settling Parties agree to transmit documents electronically, unless

7   impracticable or impossible due to size limitations. Electronically transmitted

8   documents shall be deemed submitted on the date of the electronic transmission. If a

9   document cannot be sent electronically, it shall be sent by overnight mail or courier.

10  Any change of address or addresses shall be communicated in the manner described

11  above for giving notices.

12      61.   Effect of Consent Decree. Except as provided herein, Channelkeeper

13  does not, by its consent to this Consent Decree, warrant or aver in any manner that the

14  County's compliance with this Consent Decree will constitute or result in compliance

15  with any Federal or State law or regulation. Nothing in this Consent Decree shall be

16  construed to affect or limit in any way the obligation of the County to comply with all

17  Federal, State, and local laws and regulations governing any activity required by this

18  Consent Decree.

19      62.   Counterparts. This Consent Decree may be executed in any number of

20  counterparts, all of which together shall constitute one original document. Telecopy,

21  email of a .pdf signature, and/or facsimile copies of original signature shall be deemed

22  to be originally executed counterparts of this Consent Decree.

23      63.   Modification of the Consent Decree. This Consent Decree, and any

24  provisions herein, may not be changed, waived, discharged, or terminated other than

25  by the operation of paragraphs eight (8) and/or sixty-four (64) unless by a written

26  instrument, signed by the Settling Parties and approved by the Court.

27      64.   Early Termination. If the County selects and implements the Storm

28  Water Diversion option and demonstrates that the Storm Water Diversion option

---

captures and diverts storm water from the Capture Area for the Facility during Design Storms as set forth above in paragraphs 18 through 20 above, the parties will provide notice to the Court that the County has implemented the Storm Water Diversion option and jointly request an order for termination of the Consent Decree within 30 days of Plaintiff's notice to Defendant that its demonstration satisfies the terms of the Consent Decree.

65.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

66.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

67.    <u>Authority</u>. The undersigned representatives for Channelkeeper and the County each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

68.    The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

69.    The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the County does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and Complaint.

1    **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree
2    as of the date first set forth below.
3    APPROVED AS TO CONTENT
4
5    Dated: July _____, 2016               By: _____
6                                          Kira Redmond
                                           Santa Barbara Channelkeeper
7
8
9    Dated: July _____, 2016               By: _____
10                                         Peter Adam
11                                         Chair, Santa Barbara County Board of
                                           Supervisors on behalf of
12                                         County of Santa Barbara
13   APPROVED AS TO FORM
14
15   Dated: July _____, 2016               By: _____
16                                         Daniel Cooper
17                                         Lawyers For Clean Water, Inc.
                                           Attorney for Plaintiff
18
19                                         MICHAEL C. GHIZZONI
                                           COUNTY COUNSEL
20
21   Dated: July _____, 2016               By: _____
22                                         Amber R. Holderness
                                           Deputy County Counsel
23                                         Attorney for Defendant
24          IT IS SO ORDERED.
25
26   DATED:  September 21, 2016
27                                         Hon. Beverly Reid O'Connell
                                           United States District Judge
28